FILED
2012 Apr-12 PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION



| | |
|---|---|
| ASHLEY L. MANER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CV-12-HS-1088-E |
| v. | ) CIVIL ACTION NO:_____ |
| | ) |
| LINKAN, LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| d/b/a | ) |
| | ) |
| FUGI JAPANESE CUISINE, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Ashley L. Maner, by and through her counsel of record, and for her Complaint against Defendant, LinKan, LLC, d/b/a Fugi Japanese Cuisine, states the following:

### STATEMENT OF THE CASE

1. This is a lawsuit brought by the Plaintiff, Ashley L. Maner, who has been affected by the discrimination alleged in the claims set forth below, seeking permanent relief from unlawful employment practices involving retention, compensation, and other terms and conditions of employment in failing to remedy systemic wrongful employment practices on the basis of gender. The intentional practices committed by the Defendant violate Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") on the basis of gender discrimination.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e, *et seq.*

3. Plaintiff has fulfilled all conditions precedent to the bringing of this action under Title VII. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed Charge Number 420-2011-00645 on December 15, 2010 (attached hereto as Exhibit "A"). Plaintiff timely files this action within ninety (90) days of receipt of her Notice of Right to Sue from the EEOC, dated as having been mailed on January 11, 2012 (attached hereto as Exhibit "B").

4. The Defendant is located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff is a twenty-three (23) year-old female resident of the state of Alabama and this judicial district and division. She was employed by Defendant at all times material herein.

6. Defendant, LinKan, LLC, d/b/a Fugi Japanese Cuisine is, upon information and belief, a company doing business in this judicial district and division. Defendant meets the jurisdictional prerequisites of Title VII. At all times material herein, Defendant was the Plaintiff's employer.

## COUNT ONE
## TITLE VII - GENDER
## DISPARATE TREATMENT/ WRONGFUL TERMINATION

7. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

8. Plaintiff began working as a waitress at Fuji Japanese Cuisine ("Fuji") in Oxford, Alabama, which is owned by LinKan, LLC, in February of 2008, By the time of her termination, she reported to Sebastian Lin and Jennifer Lin, as well as William Crosby.[1] Sebastian Lin is the son of the founders/owners of LinKan, LLC, and Jennifer Lin is his wife. William Crosby is one of the restaurant's managers.

9. From February of 2008 until June of 2010, Defendant had no problems with Plaintiff working there. She was never disciplined or written up, and she was an excellent employee.

10. On June 17, 2010, Plaintiff learned that she was pregnant. On June 18,

---

[1] Mr. Crosby began working for Fuji after Plaintiff did. He was originally a waiter, and was promoted to manager in the summer of 2010.

2010, the following day, she told everyone at work, and she informed Jennifer Lin, her manager, that she was pregnant.

11. Ms. Lin immediately said to Plaintiff, "After four months, you'll have to be let go." She was referring to four months into Plaintiff's pregnancy. When Plaintiff asked why, Ms. Lin informed her that she could get hurt or fall down. Plaintiff told Ms. Lin that she could just as easily fall down or get hurt before she was pregnant, so what was different now?

12. Nonetheless, Ms. Lin told Plaintiff that she would have to stop working in September because of her pregnancy, even though Plaintiff wanted to continue working, and was medically able to do so. Plaintiff informed her that firing someone due to pregnancy was illegal, but it made no difference to management.

13. When Plaintiff was getting close to her last day in September, she cried about having to leave and asked Ms. Lin to allow her to stay longer. Ms. Lin allowed Plaintiff to stay until October 24, 2010, but no longer than that.

14. When Ms. Lin made out the last work schedule that included Plaintiff, Plaintiff asked her, Lin, again if they would allow her, Plaintiff, to continue working longer. Plaintiff even offered to work as a hostess, rather than a waitress. Ms. Lin refused, informing Plaintiff that it would still be too dangerous and that Plaintiff would be "too big."

4

15. Ms. Lin informed Plaintiff that they might call her in to work on Halloween, which Plaintiff was more than willing to do, but Ms. Lin said that the October 24 day was her final day on the schedule. Defendant never called Plaintiff to work on Halloween.

16. Plaintiff's co-workers, with whom she had become close friends, threw her a shower before her last day at work. Neither the owners nor Mr. Crosby, however, even bothered to attend the shower.

17. Plaintiff asked for and received a letter from Defendant explaining why she was being let go. The letter was prepared by William Crosby on September 30, 2010, and was signed by Jennifer Lin, whom Plaintiff witnessed signing it. **The letter states that Plaintiff "will be released for [sic] work at Fuji japanese cuisine [sic] on October 24, 2010 by no fault of her own due to hazardous working conditions that could have a direct effect on her pregnancy."**

18. Plaintiff did not leave voluntarily, and was made to leave even though she asked to keep working, even if she had to be a hostess, rather than a waitress. Plaintiff asked her physician if she was medically able to work, and he said that she was.

19. On numerous occasions Plaintiff asked her manager, Mr. Crosby, if she would be re-hired, to which Mr. Crosby could only respond that he did not know.

When Plaintiff asked Sebastian Lin if she would be re-hired, he said "probably not", and explained that the Defendant would likely have already hired someone to replace her.

20. When Plaintiff filed for unemployment, the Defendant fought it, claiming that she had left voluntarily. At Plaintiff's unemployment hearing on December 6, 2010, William Crosby claimed that no one had made Plaintiff stop working.

21. Crosby also claimed that he had asked Plaintiff for a doctor's note clearing her to work, and that she had not provided it. That statement is untrue. No one at Fuji ever asked Plaintiff for a doctor's note. The decision to terminate her for being pregnant had already been made. Mr. Crosby did, however, admit that he had created the September 30, 2010 letter.

22. During her time working for Fuji, Plaintiff witnessed one other incident in which management informed a pregnant woman that her pregnancy was a problem, and unwelcomed. Ashley Stewart, who was also a waitress at Fuji, became pregnant. As she was four to five months along, and showing, Jennifer Lin informed Ms. Stewart that she, Jennifer Lin, and the other employees were uncomfortable around her, Ashley Stewart, due to her size. As a result, Ms. Stewart left the restaurant.

23. Defendant has a history and pattern of mistreating employees,

particularly foreign-born employees. The restaurant employs six to eight Hispanic men who clean, make repairs, and do anything asked of them. They work from 10 a.m. until 10 p.m. during week days, and 10 a.m. until 11 p.m. on the weekends, with only three short breaks to eat.

24. If the Lins believe that one of the Hispanic employees has been sitting down too long, or is too lazy, they will threaten to send him back to Mexico. The men are only referred to as "amigos" until they have worked for the restaurant for a long time - at that point they can either pick a name that the Lins can pronounce, or the Lins pick a name for them.

25. In taking the above-described actions, the Defendant intentionally discriminated against Plaintiff on the basis of her gender, female, in violation of Title VII. Defendant wrongfully terminated Plaintiff because of her pregnancy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

    a.    Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or in lieu thereof, front pay;

    b.    Back pay from the date of her wrongful termination;

    c.    Injunctive relief;

    d.    Pre-judgment interest;

    e.    Attorneys' fees;

    f.    Costs;

    g.    Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement benefits, mental anguish, emotional distress, both past and future;

    h.    Punitive damages, to deter such conduct in the future; and

    i.    Such other legal or equitable relief as may be appropriate to effectuate the purposes of Title VII, or to which she may be entitled.

## COUNT TWO
## TITLE VII - RETALIATION

26. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

27. Plaintiff engaged in protected activity within the meaning of Title VII on June 18, 2010 when she complained to Defendant that firing someone due to pregnancy was illegal.

28. Defendant intentionally retaliated against Plaintiff on the basis of her gender, female,, in violation of Title VII when it ignored Plaintiff's protected activity and terminated Plaintiff.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the

following relief:

    a.    Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or in lieu thereof, front pay;

    b.    Back pay from the date of her wrongful termination;

    c.    Injunctive relief;

    d.    Pre-judgment interest;

    e.    Attorneys' fees;

    f.    Costs;

    g.    Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement benefits, mental anguish, emotional distress, both past and future;

    h.    Punitive damages, to deter such conduct in the future; and

    i.    Such other legal or equitable relief as may be appropriate to effectuate the purposes of Title VII, or to which she may be entitled.

**PLAINTIFFS DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

*/s/ M.G. Murphy*

John D. Saxon
Alabama Bar No. ASB-3258-O71J
Margaret G. Murphy
Alabama Bar No. ASB-9372-R76M
Attorneys for Plaintiff

**OF COUNSEL:**

JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203
Tel:     (205) 324-0223
Fax:    (205) 323-1853
Email:  jsaxon@saxonattorneys.com
           mmurphy@saxonattorneys.com

**PLAINTIFF'S ADDRESSES**

Ashley L. Maner
2208 Vigo Road
Piedmont, Alabama 36272

**PLEASE SERVE DEFENDANT BY
CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

**LINKAN, LLC**
c/o Hsien Change, Lin
1503 Watson Way
Jacksonville, Alabama 36265