# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ASHLEY L. MANER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:12-CV-1088-VEH |
| | ) |
| LINKAN, LLC, d/b/a FUGI | ) |
| JAPANESE CUISINE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The defendant ("Linkan") has filed two post-judgment motions. The first is a motion to vacate, alter, or amend this court's final judgment under Federal Rule of Civil Procedure 59(e) ("Rule 59 Motion"). Doc. 34. The second motion asks this court to do two things: (1) allow Linkan to add a post-verdict res judicata/collateral estoppel defense to its Answer, and (2) dismiss this action as a result ("Dismissal Motion"). Doc. 38. The court has considered the arguments made in the following documents:

- Linkan's attached memorandum to its Rule 59 Motion (Doc. 34-1)

- A Response to the Rule 59 Motion (Doc. 40) filed by the plaintiff ("Ms. Maner")

- Linkan's Amendment to its Dismissal Motion (Doc. 39)

• Ms. Maner's Response to the Dismissal Motion (Doc. 41)

For the following reasons, the court will **DENY** Linkan's Motions.

**I.     Linkan's Rule 59 Motion fails because it neither produces newly-discovered evidence nor identifies any manifest legal or factual trial errors.**

On August 1, 2013, a jury returned a verdict in Ms. Maner's favor on both her pregnancy discrimination and retaliation claims. Doc. 29. The jury awarded her a combined $50,000 for emotional distress damages and $250,000 for punitive damages. *Id.* In its final judgment, this court reduced these amounts to a net total of $50,000 because of the applicable damage caps found in 42 U.S.C. § 1981a(b)(3)(A). Doc. 33 at 2-3. Federal Rule of Civil Procedure 59(e) allows litigants to file a motion to alter or amend a judgment no later than 28 days after the court enters the judgment. Fed. R. Civ. P. 59(e). Under this provision, Linkan timely asks the court to either (1) delete or strike the punitive and/or emotional distress damages awards, or (2), alternatively, lower the award for emotional damages. Doc. 34 at 1. Linkan generally argues that "there was insufficient evidence to justify the award of either emotional damages or punitive damages." *Id.*

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th

Cir. 1999) (citation omitted). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (citations omitted). "[T]he decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Lawson v. Singletary*, 85 F.3d 502, 507 (11th Cir. 1996) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)).

### A.     *Emotional Distress Damages*

Linkan has not met this standard in regard to Ms. Maner's emotional distress damages award. Relying primarily on Fifth Circuit precedent, Linkan argues that Ms. Maner "has not met her burden of proving that she has suffered emotional damages . . ." Doc. 34-1 at 4. Linkan further contends that Ms. Maner did not prove a "specific discernible injury to [her] emotional state." *Id.* (quoting *Patterson v. PHP Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)). In support, Linkan generally asserts that Ms. Maner gave "scant evidence of any emotional damages she may have suffered." *Id.* at 1. It does not, however, cite the specific parts of her testimony that it found

deficient.[1]

These arguments are insufficient under Rule 59(e). Linkan does not offer any newly-discovered evidence concerning Ms. Maner's emotional damages. Nor does it identify any "manifest" legal or factual errors made during the trial on this issue. Instead, Linkan generally maintains that Ms. Maner offered inadequate evidence on the emotional harm she suffered. Even were this claim not unjustifiably vague, such an argument "could have been raised prior to the entry of judgment." *Michael Linet*, 408 F.3d at 763. Linkan further does not specifically cite any controlling precedent in this Circuit revealing a manifest legal error. Because of these facts, the court will neither strike nor reduce Ms. Maner's emotional distress damages award.

### B.     *Punitive Damages*

Linkan also does not satisfy Rule 59 standards on the punitive damages issue. Under the Civil Rights Act of 1991, a Title VII plaintiff may recover punitive damages if they can show that the defendant intentionally "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the [plaintiff's] federally protected rights . . ." 42 U.S.C. §

---

[1] Linkan claims in its Motion that it has ordered her testimony transcript "so that her exact testimony can be quoted correctly and can be reviewed." Doc. 34-1 at 1 n.1. However, Linkan never supplemented its Motion with any such pinpoint citations to her testimonial transcript.

1981a(b)(1). Linkan argues that there is no evidence that Linkan "through its agent acted with malice or reckless indifference" to Ms. Maner's federally-protected rights. Doc. 34-1 at 7. It justifies this claim in the following manner:

> In the case now before the court it has not been shown by the Plaintiff that the manager of Fugi restaurant even knew it was against the law to fire someone because of pregnancy. The Plaintiff's complaint was made to Jennifer Lin who testified that the real manager of the restaurant was not her, but Crosby Price. It was Lin to whom the Plaintiff says she complained that it was against the law to fire somebody because they are pregnant.
>
> . . .
>
> Since the Plaintiff failed to show any evidence that the manager, Crosby Price, knew of the purported violation of her claim of being fired because she was pregnant or that he otherwise acted with reckless indifference, the Plaintiff cannot successfully assert liability against his principal, Linkan, LLC, as there is no evidence that Linkan, LLC, acted with malice or with reckless indifference through its manager, Crosby Price.

Doc. 34-1 at 5-6. Linkan particularly complains that no "fact-intensive inquiry" was made during the trial to determine whether Mr. Price and Ms. Lin's actions could be justly imputed to Linkan under traditional agency principles. *Id.* at 6 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543 (1999)).

In order to be liable for punitive damages, Linkan must have acted with malice or reckless indifference to Ms. Maner's civil rights. That is, it must have "at least discriminate[d] in the face of a perceived risk" that its actions violated federal law. *Kolstad*, 527 U.S. at 536. More specifically, "[m]alice means 'an intent to harm' and

recklessness means 'serious disregard for the consequences of [one's] actions.'" *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (quoting *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996)) (alteration in original). "A jury may find reckless indifference where the employer does not admit that it knew that its actions were wrong." *EEOC v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (citing *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 582 (7th Cir.1996)). "However, mere negligence as to the civil rights of employees is not enough to justify punitive damages." *Id.* (citing *EEOC v. Wal–Mart Stores Inc.*, 156 F.3d 989, 992 (9th Cir.1998)).

Here, Linkan denies that the jury could have justly found it vicariously liable for its employees' discriminatory actions. "[I]n express terms, Congress has directed federal courts to interpret Title VII based on agency principles." *Kolstad*, 527 U.S. at 541 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998)). Under such principles, a court may award punitive damages against a principal for the actions of its agent if:

- the principal authorized the doing and the manner of the act;

- the agent was unfit and the principal was reckless in employing him;

- the agent was employed in a managerial capacity and was acting in the scope of employment; or

- the principal or a managerial agent of the principal ratified or approved the act.

*See id.* at 542-43 ((quoting Restatement (Second) of Agency § 217 C (1957)). In determining whether an agent was employed in a managerial capacity, the court "should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Id.* (quotation omitted). Under this analysis, "an employee must be 'important,' but perhaps need not be the employer's 'top management, officers, or directors,' to be acting "in a managerial capacity." *Id.* (quotation omitted). However, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Id.* at 545 (quotation omitted).

With these principles in mind, the court disagrees with Linkan that it has identified any manifest trial error. Instead, it appears to be re-litigating matters it either raised – or could have raised – during trial. Linkan disputes that Jennifer Lin acted in a managerial capacity at Fugi Restaurant. *See* Doc. 34-1 at 5-6. Both parties exhaustively litigated this point at trial. In fact, Ms. Maner testified that she did not consider Ms. Lin her "day-in-and-day-out" manager; that was Crosby Price. Doc. 36 at 13-14, 78. Rather, Ms. Maner considered Ms. Lin part of ownership. *Id.* at 13-14.

Ms. Lin was married to Sebastian Lin (for at least part of the relevant time) and prepared the weekly schedules for the restaurant employees. *Id.* at 14, 78-79. Ms. Maner explicitly agreed with her attorney's statement that Ms. Lin was "in a position where she could give people instructions and orders and tell them what to do and when to do it." *Id.* at 14. Linkan thus had the opportunity to cross-examine Ms. Maner on this point, and the jury was able to evaluate the competing evidence. There was, therefore, sufficient evidence for the jury to reasonably conclude that Ms. Lin was Linkan's agent who was "employed in a managerial capacity and was acting in the scope of employment" when she discriminated against Ms. Maner despite Ms. Maner's repeated protests that such conduct was illegal. *Kolstad*, 527 U.S. at 542 (quoting Restatement (Second) of Agency § 217 C (1957)). Accordingly, the court will not vacate Ms. Maner's punitive damages award.

**II.   Linkan's Dismissal Motion fails because it does not comply with Rule 15.**

As noted above, the jury in this action returned its verdict on August 1, 2013. Doc. 29. On that same day, the Circuit Court for Calhoun County, Alabama, entered an Order in a pending unemployment compensation suit that Ms. Maner had filed in that venue. Doc. 42-2. That Order reversed an Alabama Department of Industrial Relations decision finding that Ms. Maner had voluntarily left her position at Fuji

"without good cause connected to work." *Id.* at 1. The state court thus awarded her unemployment compensation benefits. *Id.* On August 7, 2013, this court entered final judgment in the instant action. Doc. 33. On September 12, 2013, Linkan filed its Motion asking this court to permit it to amend its Answer to "interpose the defenses of res judicata and/or collateral estoppel" because "[t]he issues in this civil action (including whether Plaintiff voluntarily resigned her employment or was involuntarily terminated) are substantially similar to the issues presented, and could have been presented by Plaintiff, in [her] Unemployment Compensation Case." Doc. 38 ¶ 5, 7. Linkan also asks the court to dismiss the action with prejudice on this basis. *Id.* ¶ 8.

The court will not do either action because Federal Rule of Civil Procedure 15 does not permit it. Rule 15(a) governs pleadings amendments before trial and does not apply once the court has entered final judgment. *See* Fed R. Civ. P. 15(a); *Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984). Rule 15(b), on the other hand, permits amendments after trial to reflect issues tried by consent. The relevant provision reads:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2). This is the only scenario in which Rule 15 permits post-

judgment amendment. It obviously does not apply in this action.[2]

### III. Conclusion

For these reasons, the court will **DENY** Linkan's Rule 59 Motion and its Dismissal Motion.

**DONE** and **ORDERED** this the 21st day of November, 2013.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[2] The Eleventh Circuit has stated that a party may amend its pleadings post-judgment after it has been granted relief under either Rule 59(e) or Rule 60. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344-45 (11th Cir. 2010) (citations omitted). This situation also does not apply here.