FILED
2014 Jun-13  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **ASHLEY L. MANER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:12-CV-1088-VEH** |
| | ) |
| **LINKAN, LLC, d/b/a FUGI** | ) |
| **JAPANESE CUISINE,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

### INTRODUCTION

The plaintiff (Ms. Maner) has submitted a Petition for Award of Attorney's Fees and Costs, doc. 37, which she has since supplemented, doc 46. Considered together, Ms. Maner requests a combined attorney's fee amount of $90,187.50 and a combined costs amount of $2,262.38 – for a total award of $92,449.88. Doc. 46 at 5. The defendant (Linkan) has filed an opposition in which it argues that this request is excessive. Doc. 43. In accordance with the attached revisions – and for the following reasons – the court will grant Ms. Maner $37,600 in attorney's fees and $958.31 in costs, for a total award of $38,558.31.

### STATEMENT OF THE CASE

Ms. Maner filed her Complaint on April 10, 2012. Doc. 1. In it, she alleged pregnancy discrimination and retaliation claims against Linkan under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2000e-17. *Id.* ¶¶ 7-28. Both claims related to one adverse employment action – Ms. Maner's termination on October 24, 2010. *See id.* The case went to trial on July 29, 2013. On August 1, the jury returned a verdict in Ms. Maner's favor on both claims. Doc. 29. On her pregnancy discrimination claim, the jury awarded her the following damages:

- $6,000 in compensatory damages for net loss of wages;

- $25,000 in compensatory damages for emotional pain and mental anguish; and

- $200,000 in punitive damages.

*Id.* at 1-2.  On her retaliation claim, the jury awarded her the following damages:

- $8,000 in compensatory damages for net loss of wages;

- $25,000 in compensatory damages for emotional pain and mental anguish; and

- $50,000 in punitive damages.

*Id.* at 3-4. The court entered final judgment on August 7, 2013. Doc. 33. Relying on the caps mandated by 42 U.S.C. § 1981a(b)(3)(A), the court reduced Ms. Maner's total award to $56,000. *Id.* at 3. The court also set September 6 of that year as the

deadline for any attorney's fee request. *Id.*

Linkan filed two post-judgment motions: a Motion to Alter Judgment (doc. 34) on August 23, 2013, and a Motion to Add Defense of Res Judicata and/or Collateral Estoppel and to Dismiss (doc. 38) on September 12, 2013. The court denied both motions on November 21, 2013. Doc. 44. In the interim, on September 6, 2013, Ms. Maner filed her Petition for Award of Attorney's Fees and Costs. Doc. 37. Linkan filed its responsive opposition on October 23. Doc. 43. The court filed a Scheduling Order on November 21, 2013, allowing Ms. Maner to supplement her attorney's fee request to account for the time and expenses associated with litigating Linkan's post-judgment motions. Doc. 45. On December 5, 2013, Ms. Maner accordingly supplemented her request. Doc. 46. On February 21, 2014, the court entered a Show Cause Order requiring Ms. Maner to explain why her request should not be denied for failing to comply with certain verification procedures mandated by the court's Uniform Initial Order. Doc. 47. On February 28, 2014, Ms. Maner responded to the court's Order and corrected the referenced deficiencies. Doc. 48.

## LEGAL FRAMEWORK

The most useful starting point for determining attorney's fees is that "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d

1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The product of this formula is the 'lodestar,' which is 'the guiding light of our fee-shifting jurisprudence.'" *Kenny A. ex rel. Winn v. Perdue (Perdue)*, 532 F.3d 1209, 1219 (11th Cir. 2008) (internal quotations omitted), *rev'd and remanded on other grounds*, 559 U.S. 542 (2010). Excluded from the lodestar calculation are "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1101, at 6 (1976)).

Following the lodestar determination, the court will then address whether the fee should be adjusted upward or downward. In this analysis, it may be guided by the twelve factors described in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[1] "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the [partial or] limited success." *Hensley*, 461 U.S. at 436–37. However, "[t]he Supreme Court has instructed us that there is a 'strong presumption' that the lodestar figure, without any adjustment, is the

---

[1] Where it has not been abrogated, *Johnson* is controlling authority in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

4

reasonable fee award." *Perdue*, 532 F.3d at 1220 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

## DISCUSSION

In accordance with the legal framework set forth above, the court first looks to the amount of hours reasonably expended and then turns to the reasonable hourly rate.[2] Following this lodestar determination, the court will then determine whether an upward or downward adjustment is necessary. Finally, the court determines the type and amount of costs to be awarded.

### A.    *Prevailing Party Status*

The Civil Rights Act provides, "In any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k). So, whether Ms. Maner qualifies as a "prevailing party" is a threshold inquiry. Here, it is clear that she

---

[2]Ms. Maner was represented by three counsel: John D. Saxon, Joseph A. Hutchings, and Margaret G. Murphy. Although they submitted a collective fee request, each attorney requested compensation for a different quantity of hours at a different hourly rate. In making the lodestar determination below, the court will therefore differentiate how many hours it credited each attorney and at what respective hourly rate it did so.

5

qualifies as such because the court entered judgment in favor of her against Linkan. Thus, the court turns to its lodestar analysis.

### B.    *Lodestar Figure*

#### 1.    *Reasonable hours expended*

As a general matter, courts in the Eleventh Circuit determine the reasonable hours expended by performing "a task-by-task examination of the hours billed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999) (citations omitted). The court did so in this case. In total, Ms. Maner's counsel seek to recover for approximately 272.90 hours of work expended in litigating the case. Doc. 46-1 at 16. "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates ." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citation omitted). Indeed, "fee counsel should [maintain] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (citations omitted). "[W]here that party presents inadequate documentation the court may determine a reasonable award based on its own experience." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (citation omitted).

With these principles in mind, the court concludes that Ms. Maner's counsel

reasonably expended 151.80 hours in litigating this case. Put more specifically, the court allots the following hours to the following respective counsel:

| Attorney | Hours |
|----------|-------|
| Mr. Saxon | 71.5 |
| Ms. Murphy | 76.8 |
| Mr. Hutchings | 3.5 |

This quantity obviously represents a reduction from the submitted request. After reviewing the documentation provided by counsel, the court found that many of the hours expended were not reasonably included in the total. In some cases, the court found that the duties performed were clerical in nature. In others, the recorded duties were duplicative of other entries that the court had already credited. Further, Ms. Maner's counsel frequently provided insufficient detail for the court to discern the nature and quality of the hours expended. In each of these cases, the court discounted the entered hours from the total amount sought. Additionally, while the court allowed mileage to and from Anniston, Alabama, for hearings on and trial of this case, it disallowed attorney fee time (over $3000 for Mr. Saxon and almost $1000 for Ms. Murphy) for such travel. Plaintiff's counsel chose to go home each night

rather than stay in a hotel.[3]

Finally, the court decided not to credit the hours Ms. Maner's counsel spent litigating Ms. Maner's unemployment compensation case before the Alabama Department of Industrial Relations. *See* Doc. 37-1 at 11-19. In his affidavit in support of Ms. Maner's fee petition, Mr. Saxon justified the inclusion of these hours expended because they were "integrally related to the sole issue in this case: whether Ashley Maner left her employment at Fuji Japanese Cuisine voluntarily, or whether she was terminated because of her condition of pregnancy." *Id.* at 5. According to Mr. Saxon, "[E]very aspect of [Ms. Maner's] unemployment compensation claim and appeals was directly relevant to, and probative of, the matter before this Honorable Court." *Id.*

The court does not find this conclusory argument persuasive, as it is unsupported by explanation or authority. Ms. Maner's unemployment compensation case was administrative in nature, and it centered on materially distinct legal issues. Even assuming the factual provenance of that case was identical to this one, its resolution was fully segregated from the proceedings before this court. In short, Ms. Maner's counsel has not made the necessary showing required to convince this court

---

[3]For a more detailed, "task-by-task examination of the hours billed," *Barnes*, 168 F.3d at 429, please see the attached itemization with the court's annotations.

that the hours expended litigating that case should be integrated into the present fee calculation. The court thus also discounts these entered hours from the total amount sought.

### 2.    *Reasonable Hourly Rate*

The next issue is the reasonable hourly rate Ms. Maner's various counsel merit. A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). Establishing the market rate is the plaintiff's burden, which must be done by "satisfactory evidence." *Norman*, 836 F.2d at 1299 (citation omitted). "Satisfactory evidence" means "more than the affidavit of the attorney performing the work." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted). "The rate of attorney's fees is that of the place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (citing *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983)).

"A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437. "[F]ee counsel should [maintain] records to show the time spent on the different claims, and

the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. If the party submits inadequate documentation, the district court may reduce the amount of the award. *See id*.

In making its determination as to the reasonable hourly rate, the Court is also guided by the *Johnson* factors, which are:

- the time and labor required;

- the novelty and difficulty of the questions;

- the skill requisite to perform the legal service properly;

- the preclusion of employment by the attorney due to acceptance of the case;

- the customary fee;

- whether the fee is fixed or contingent;

- time limitations imposed by the client or the circumstances;

- the amount involved and the results obtained;

- the experience, reputation, and ability of the attorneys;

- the "undesirability" of the case;

- the nature and length of the professional relationship with the client; and

- awards in similar cases.

10

*See Johnson*, 488 F.2d at 717-19.

In support of her fee petition, Ms. Maner submits two affidavits: one sworn by Mr. Saxon (doc. 37-1 at 2-7, as amended, doc. 48-1 at 2-8) and one sworn by Ms. Alisha K. Haynes of Haynes & Haynes, P.C., in Birmingham, AL (doc. 37-3 at 2-8). Mr. Saxon requests an hourly rate of $450.00 for himself, $250.00 for Mr. Hutchings, and $225.00 for Ms. Murphy. Doc. 37-1 at 5-6. In support of his own requested rate, Mr. Saxon vouches for the following supporting facts:

- he regularly represents business executives, government officials, educators, attorneys, and others who pay rates of $385.00 per hour;

- attorneys with his qualifications and experience in the employment litigation arena receive fees in that amount and "significantly higher;" and

- he was the partner principally responsible for handling this case and was lead trial counsel.

*Id.* at 4-5. In support of Mr. Hutchings's and Ms. Murphy's requested rates, Mr. Saxon further vouches for their education, credentials, and practice experience within employment litigation. *Id.* at 5-6. Mr. Saxon also assures this court that he exercised "billing judgment" in reviewing the attached billing records in order "to exclude any hours which are duplicative, vague, unnecessary, or otherwise inappropriate." *Id.* at 5 (footnote omitted).

In her affidavit, Ms. Haynes affirms her credentials as a litigator in this field,

11

which include 22 years of practice in employment discrimination and civil rights
litigation and other related employment fields. Doc. 37-3 at 3. She further confirms
that she has personally reviewed the billing records maintained by Mr. Saxon, Mr.
Hutchings, and Ms. Murphy – as well as the pleadings and motions filed in this
matter. *Id.* She claims familiarity with the rates billed and paid in this district in
employment discrimination litigation and similar cases "requiring comparable skill,
effort and responsibility." *Id.* at 4-5. She vouches that the prevailing market rate in
Alabama for plaintiff's attorneys in cases such as the present one ranges from $225
to $550 per hour – depending upon the attorney's skill level, the client's
sophistication, and the attorney's ability to negotiate a compensatory rate. *Id.* at 5.
Based on her "knowledge of the prevailing hourly rates charged for similar litigation
by attorneys with comparable skill and experience," Ms. Haynes supports the
requested rates by the attorneys in this case as "reasonable and well within the range
of appropriate hourly charges in the local market for legal services." *Id.* at 6.

The court has relied on its own expertise in order to reach the appropriate
hourly rate. However, the court also considered the experience and reputation of the
attorneys, as attested to by the affidavits and declarations, the customary fees, the
evidence provided by both sides as to the reasonable hourly rate, and the court's own
review of previous fee awards. With these considerations in mind, the court finds the

12

following hourly rates are reasonable in this case:

| Attorney | Rate |
|---|---|
| Mr. Saxon | $385.00 |
| Mr. Hutchings | $135.00 |
| Ms. Murphy | $125.00 |

### 3. Lodestar Calculation

Multiplying the hours reasonably expended by the reasonable hourly rates, the court finds that the following amount represent the lodestar calculation:

**TOTAL LODESTAR AMOUNT:**          $37,600

### C. Adjustments to the Lodestar

"After determining the lodestar amount as above, the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1302). "If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.'" *Villano*, 254 F.3d at 1308 (quoting *Hensley*, 461 U.S. at 435).

The Eleventh Circuit provided the court with particularly meaningful guidance

in *Norman* when it wrote:

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.

836 F.3d at 1302 (internal citations omitted). In accordance with the Eleventh Circuit's guidance in *Norman*, the court looks to the scope of the litigation as a whole, focusing on the significance of the overall results achieved in light of the substantial hours expended in pursuing this case.

With these considerations in mind, the court finds that neither an enhancement nor a reduction to the lodestar amount is justified in this case. The court will next determine what costs it should credit Ms. Maner.

### D.    Costs

Ms. Maner also requests $2,262.38 in case-related costs and expenses. Doc. 46-1 at 17. "With the exception of routine overhead office expenses normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case, may be taxed

as costs; the standard of reasonableness is to be given a liberal interpretation." *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1498 (M.D. Ala. 1996) (citing *NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir. 1987); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983)).

For the reasons cited above, the court has deducted from the requested total any expenses associated with Ms. Maner's Alabama unemployment compensation case. The court has also discounted certain fax transmission charges because it could not determine whether such expenses were associated with the present case or with the unemployment compensation case. Accordingly, the court finds that Ms. Maner is entitled to the following costs award:

**TOTAL COSTS AWARDED**:        $958.31

### CONCLUSION

The court finds that Ms. Maner's Petition for Award of Attorney's Fees and Costs is due to be **GRANTED**.  Consistent with the reasoning in this Memorandum Opinion, the court finds that Ms. Maner is due to be awarded the following amount as attorney's fees and costs: $38,558.31.

**DONE** this the 13th day of June, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15